We'll hear from counsel. May it please the court. My name is Rebecca Kurz and I'll be arguing on behalf of Mr. Wiggins this morning. This appeal concerns the district court's choice of remedy in granting post-conviction relief. Could you raise the lectern a little bit so the mic picks up your voice from recording? Okay, are we better there? That's better, thank you. Okay, I'll speak up too. The appeal concerns the choice of remedy the district court granted in granting post-conviction relief on an ineffective assistance of counsel claim. Mr. Wiggins was charged with conspiracy to distribute five kilograms or more of cocaine. He had two prior felony drug convictions and therefore he faced a mandatory life sentence on count one of the indictment. Mr. Wiggins rejected a favorable plea offer because counsel gave him erroneous advice as to the range of punishment. Counsel had told Mr. Wiggins that one of his prior felony drug convictions didn't count because it was only a simple possession rather than distribution. And so counsel told Mr. Wiggins that the actual range of punishment would be 20 years to life. The government made a plea offer in the case that had two options. One was for a binding offer of 15 years. The second option was to plead to a reduced charge that would have a mandatory minimum of 10 years. So on that second option the range would have been 10 to life or you can take a binding 15. Now the government's primary argument is that the district court said that it did not believe Mr. Wiggins' testimony that he would have accepted the binding 15 year plea offer. And the government kind of treats this as dispositive of the entire claim and I think that's wrong for a couple of reasons. First of all I want to point you to another document in the record, Exhibit G. It's in Appellant's addendum that is attached to the brief. It is an email chain between the Assistant United States Attorney and Mr. Wiggins' trial counsel. In the addendum I believe it's the very last document. I think there's two pages of email exchanges and the portion I'm referring to I believe is at the bottom of that second page. Trial counsel tells the Assistant United States Attorney, quote, Client is unwilling to enter into an open plea. Later he says Mr. Wiggins wants a guarantee of what sentence he will receive. Trial counsel countered offered a seven year binding plea. Government said no we can't go that low but we'll give you the 15 year binding. So even though the court may have found that Mr. Wiggins was not credible as to which option he would have selected under the plea offer, there's counter evidence suggesting that he would have had a difficult time accepting an open plea. But the court, the district court went on to find that because the severity of the sentence, the mandatory life, was so much higher than counsel's incorrect advice of 20 to life, that he agreed that Mr. Wiggins would have pled guilty if he had had proper legal advice. And so the court found not only that trial counsel was ineffective but that Mr. Wiggins was prejudiced by that ineffectiveness. Now this, the comment about the credibility was made in the context of determining prejudice. The court then went on to discuss in its order what the appropriate remedy should be. This is the August 18, 2016 order. That's the first document in the addendum. I'm referring to the last paragraph of page 6 up to page 7. And the court said in determining the appropriate remedy, it was going to consider the fact that Movent had falsely told his attorney that he was not the person on some wiretap evidence regarding drug transactions. The court noted that Mr. Wiggins continued to deny his guilt at sentencing, saying I was never in possession of anything. And then we get to the critical part on page 7, and this is where I think the district court abused its discretion. In fashioning the remedy, the court said further, Movent's trial lasted three days with 47 prospective jurors called, 12 jurors plus one on alternate, 10 witnesses testifying. This, along with preparation time and resources, resulted in significant cost to both the government and the court. My contention that in selecting a remedy that the court abuses its discretion, if it links the remedy selected with the fact that the defendant insisted on having his constitutional right to a jury trial. And I believe that there are three principles that should have guided the district court's discretion in deciding what the remedy should be. First of all, Borden-Kircher v. Hayes. To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. United States v. Morrison. A remedy for a Sixth Amendment violation should be tailored to the injury suffered and should not unnecessarily infringe on competing interests. So to tailor the remedy to the injuries suffered, I think, would involve the district court ordering the government to re-extend the full plea offer, not just one option, and not choosing the option that punishes Mr. Wiggins more harshly because he went to trial and used up the court's resources. And then finally, Kimmelman v. Morrison, which says it is the government that must bear the costs of ineffective assistance of counsel. Because the district court granted relief on this claim, the costs are the same no matter what. Whether the binding 15-year offer is re-extended or the 10-to-life offer is extended, the costs in the expense of the trial remain the same. So just logically, it doesn't make sense to punish him for doing that. Now I want to switch to the government's argument regarding the timeliness of the Notice of Appeal. The government contends that Mr. Wiggins should have filed within 60 days of the August 18th district court order, or within 60 days of October 11, 2016, when Mr. Wiggins entered his guilty plea. The August 18th order does nothing more than tell the government to re-extend the non-binding plea offer. It doesn't make a decision as to whether it's going to just simply correct the sentence, that it's going to vacate the convictions and have a full re-sentencing. It says whatever relief it's going to be, that will be determined later. That cannot be a final and appealable order. It does not dispose of all of the issues surrounding the litigation. Until he is re-sentenced, there is no final judgment to appeal from. Same with the entry of the guilty plea. The entry of the guilty plea, I mean, obviously can't be a final appealable order. It would just be an unworkable system to say that, well, we're going to have certain events that trigger the filing dates for Notice of Appeal, rather than having those triggered by final and appealable orders. Also, the government mentions that the August 18, 2016 order implicitly vacated his conviction and sentence. Again, I think that's just an unworkable position to say, if you have an order that implicitly does something, well, that might trigger the filing date for your Notice of Appeal. How are litigants supposed to figure that out? Anybody could read anything they want into the order and just wreak havoc as to what the correct due dates are. The issue, I believe, is governed by the United States Supreme Court's decision in Andrews v. United States. In that case, the defendant had filed a 2255 motion to vacate his sentence. His claim was that the district court had not granted him allocution. The district court granted the motion and ordered that the defendant be returned to the district for resentencing. So at that point, basically all the court had ordered, yes, I should have granted you allocution and we're going to transport you back. At that point, the government filed its Notice of Appeal. Court of Appeals ruled that it did have jurisdiction and it reversed on the merits. The Supreme Court, however, vacated the Court of Appeals judgment and remanded to the district court for the resentencing. The court says that the 2255 says that an appeal may be taken to the Court of Appeals from the order entered on the motion, as from a final judgment on application for a writ of habeas corpus. Because there was no resentencing, the order saying let's transport the defendant back to the district was merely an interlocutory order. It was not a final order. And the court said it's obvious that there can be no final disposition of the 2255 proceedings until petitioners were resentenced. I'd like to save. I have additional time if there are any questions. Otherwise, I'll save three minutes for rebuttal. If you would. We have no questions at this time. All right. Thank you. We'll hear from the government. May it please the court. My name is Phil Coppi. I represent the government in this case. I was not the attorney in the case below, but I did do the motion to dismiss the appeal and assisted on the brief. As the court is aware, the government has a motion for dismissal of the appeal pending. The court decided to take it with the case. And actually, I'd like to reverse the order here. We'll talk about that first, if it's OK with the court. As we stand here today, Mr. Wiggins is incarcerated on the basis of a judgment that was entered on December 20th, 2016. All right. That judgment was based upon a plea of guilty, and it involved a 240-month sentence. Although Mr. Wiggins filed a notice of appeal from that decision, that was later dismissed at his request. Therefore, that judgment, the judgment under which Mr. Wiggins is serving, has not been challenged. Instead, what we're doing here is looking backwards and saying we want to challenge the 2255 ruling that has already vacated that first sentence and conviction. That's gone. That's done with. Furthermore, this is not just about failure to timely file notice of appeal. This is a situation where, after the court grants the remedy, the defendant, without protest, accepts the remedy. The defendant voluntarily and knowingly pleads guilty with a plea agreement that contains a waiver of the right to appeal. Does not seek to file a conditional or enter a conditional plea of guilty, which I think would have been a possibility. He could have said to Judge Fetter, Judge, I think your remedy wasn't sufficiently large enough that I should have had the benefit of both plea agreements. All right. I would like to plead conditionally. If Judge Fetter and the government allowed that, they could have used that option. What they've done here is they've tried to get the best of both worlds. I know in my brief, I say they want a second bite of the apple. We're really talking about a third bite of the apple here. Let's let's change the facts just a little bit. If the defendant on the day of trial had decided to take one of the two plea officer offers, let's say he had he had decided to take the what we call the open plea 10 years to life. And he gets to sentencing and the judge says, all right, am I giving you 10 years? I'm giving you 240. The defendant at that point could not have said, well, well, well, wait a minute. I think I want to take that 15 year sentence instead. Obviously, they couldn't do that. But that's exactly what they're doing here. They're waiting. They waited until they accepted the remedy, didn't appeal, waited until they got the 240 month sentence. And since it was not 15 or less, decided, oh, we want to do over. We want the third bite of the apple. And the answer there is, no, you it's that's too late. You pleaded guilty without any reservation. You have an appeal waiver that precludes you from appealing from either this conviction or sentence. But you're trying to backdoor it by this untimely appeal of a 2255. The 2255 they won. We opposed the 2255. Our argument here was and I'll get into the merits for a second. Our argument here was the evidence was clear that because he had a child in school, he didn't want to do more than 10 years. He was only going to plead if he could get a 10 year fixed sentence. And that was never an option. Now, as Miss Curse pointed out, I think the judge, because he realized there had been an error. No one told the defendant, apparently, that he was facing a mandatory life sentence if convicted. Our AUSA said very serious sentence. But in fact, had he said life sentence, we wouldn't be here. But that's the way it was. So I think Judge Fenner said there was ineffectiveness and I've got to find a remedy. But he clearly had evidence from which he could find credibly that he would not have taken a 15 year fixed sentence because he said I can't do more than 10. Now, I think that same evidence would have justified Judge Fenner in finding he wouldn't have taken the 10 to life open because it didn't guarantee him 10 years. I mean, the judge could have given him anything up to and including life. So but nevertheless, I think the judge here may have been over backwards. But the judge did say, all right, I will let you I will ask the government to reopen, tell the government to reopen the second plea offer, the 10 to life. All right. Defendant takes that. The defendant doesn't say, Judge, that's that's not a broad enough remedy. Instead, they say fine. And if you look at the plea colloquy and I read it last night, at no point do they say we want to conditionally plead or we think the judge's remedy wasn't sufficient. They pled guilty. They had a plea agreement. And so it's like there's no way at this stage that's still an open question. Now, I would like to bring the court's attention to a case that I found last night and looking this over. And I shared a copy with this curse. It's a case called Davis versus the United States. And Judge Erickson may be familiar with it because he was the district court judge. And it involved a situation much like this where there was ineffectiveness. There was ineffectiveness in terms of conveying a plea offer. Defendant went to trial and was convicted and then said my lawyer was ineffective. The court of appeals partially agreed. But the point was the government in that case immediately appealed. They didn't wait for resentencing. They appealed and said, we think the remedy is incorrect. This court, in the cases Davis versus the United States, 858-529, decided May 26, 2017. This court reversed for findings as to whether or not the ineffectiveness was prejudicial. But it was not a case, as you can read, where the court waited until he was resentenced. No, the court obviously felt, and no one even raised this issue, that given the fact that the remedy ordered would have required the vacation of both the finding of guilt and the sentence. And that's what distinguishes this case from Andrews. Andrews is a case where all the court did was a finding of ineffectiveness. And they didn't vacate the finding of guilt. They merely vacated the sentence. And the Supreme Court in Andrews said, in that situation, the defendant could get the same sentence. The ineffectiveness finding wouldn't necessarily preclude a different sentence. So in the interest of judicial economy, it doesn't make sense to let them appeal immediately. But that ruling, Andrews, doesn't apply in a situation where the result of the court's ruling is the vacation of both the guilt finding and the sentence. And that's why, you know, I brought with me the two judgments. Now, I know even Judge Fenner, I think, got a little bit confused because on his second judgment, the one that was decided in 2016, he says, amended judgment. It's really not an amended judgment. It's a brand new judgment. It was entered four years later. It has to do with one count, not the two that were in the original judgment. It's based on a plea of guilty, not a jury finding. And it's a completely new sentence. It's no longer a life sentence with a—I forget what the other sentence was. We dismissed that second count pursuant to our plea agreement. So initially he had two sentences, one life, then another sentence. Now he has just the 241 sentence. So you're talking about a completely different judgment. Like I said, the amended judgment is a misnomer because it's a new judgment. And that judgment hasn't been challenged. That's the point we're trying to make. It has not been challenged. And he cannot avoid his current appeal waiver by trying to turn back the clock and argue that the 2255 remedy was incorrect when he accepted the remedy unreservingly. All right. Now I don't want to not talk about the underlying facts. So the argument that they're making is that the judge picked the wrong remedy because he mentioned the difficulty—or not the difficulties, but the fact that there were a lot of witnesses in a three-day trial and whatnot. And the question is, is that really relevant? And I don't know if it is, but the fact of the matter is the case centered on credibility findings as to what the defendant would have accepted. Would he have accepted either of the two pleas? Now, as I said earlier, I believe there was substantial evidence from which the judge could have found that he wouldn't have accepted either. Why? Because he was looking for a 10-year fixed sentence. Furthermore, he insisted throughout that he wasn't guilty. Ms. Kurz mentioned the feel on the tapes, and he was saying, that's not me. I'm not involved in that conspiracy. Whoever you have on that tape is not me. But he also said, I had a young child. I can't do more than 10 years. And a 10-year fixed was never an option. But like I said, I think the judge here in this case said, life without is a pretty serious sentence. I'm going to give the defendant the benefit of the doubt here. We were okay with that. We thought that a 240-month sentence is sufficient. We did not appeal. But—go ahead. But what about Wiggins? Wiggins says that he would have taken the 15. Well, Wiggins said that at the hearing. The judge said, based on all these other facts, I don't believe you. And there's evidence to support that. Well, I guess that was the district— But his other option was—the option the district court gave him was what? 10 to life. And indeterminate. And Wiggins knew what his record was. He knew the evidence against him. Wouldn't rejecting a 15-year fix be like drawing to an inside straight in a poker game? You've got everything to lose and a high percentage against you. Well—go ahead. Okay. I don't know. I mean, the evidence was that his attorney was trying to get him to take something. His attorney felt that this was clearly in his best interest to take one of these two pleas. And he, though, was insistent that he—well, first of all, that he wasn't guilty, so he shouldn't plead at all. But secondly, that he wasn't going to take anything that required him to serve more than 10 years. Given his record—given Wiggins' record, it was permissible for the district court, in fact, if not mandatory— well, not mandatory to find that Wiggins wasn't credible, but— Right. And not only—and it wasn't just based on the lack of credibility. I mean, there was testimony even by Wiggins that he told his attorney that he wouldn't accept anything less than a 10-year fix. Because he wanted to see his daughter graduate from— Right, right. And because he wasn't guilty. So that's the point here. I'm sorry, Judge. Go ahead, please. Isn't that exactly what happened in the Sherwin Davis case? That I found that he would have accepted the plea that was offered to him. And the court said that that never would have happened, that on these facts and on this record, that that was a clearly erroneous factual ruling. Yes. And that—so the judge doesn't get the chance to go back and say, in hindsight, that, okay, no reasonably sane man. It's not the choice he would make today. It's the choice that he would have made on the morning that the trial started or the morning that the offer expired. And in Davis, I had said that, you know, if he had known all the facts, he would have accepted this plea because it was not reasonable to turn it down. And the court said, there is no evidence in this record that would support such a finding. It's clearly erroneous. And they said, find out whether there's prejudice or not and move on from that, right? I mean, isn't that exactly the fact here? Well, no, because I think the facts here clearly support the finding. I mean, our argument is, and I think we made it in the brief, is that the facts here support a finding or would have supported a finding that he wouldn't have taken any offer. But you haven't appealed. And so that's no longer an option for this court to consider at this point. Right, and we're not appealing. What Judge Fenner found was a finding of fact is that he would have taken the 10 to life and taken his chances that he'd get 10. Right. But that's not the finding that they are challenging. They're challenging the finding that he would not have taken the 15 fixed. And on that, this is the problem I have as I look at it that troubles me. And that is the lack of any discussion by the district court of his credibility finding. He says it's not credible that movement would have accepted a binding plea agreement with a 15-year sentence, period. And I'm looking for the discussion that leads up to that conclusion. Why did he reach that conclusion? And if you can point me to some portion of the order where there's a credibility discussion, I'd like to see it. Because I don't find a credibility discussion. I find a recounting of historic facts and a recounting of testimony. And then we have the credibility conclusion. And it seems to me that there should be some kind of discussion about the factors that the court considered and why it reached this credibility finding. Well, I think the factors, Your Honor, are in the order and they have to do with the fact that the defendant said he wasn't going to accept anything other than 10 years. I think it has to do with the fact that the evidence was that he insisted throughout that he was not guilty and the facts that his attorney attempted as best he could to get him to take the offer. I think, and again, based upon all the facts, there is no basis for finding that he would have taken either offer. And so I think the judge's credibility findings are adequately supported in the record. And I see my time is up. But as I said, this would have been an interesting issue if the defendant had timely raised it and not waited to see what sentence he would have gotten. So, basically, the question of the remedy at this point, as I said, is moot. I see I've exceeded my time. And then the Davis versus United States case. Pardon? Davis versus United States. I will do a 28-J letter, Your Honor, and send that to you. Yes, you will file a 28-J. Thank you. Thank you. With respect to the Davis versus United States case, Mr. Coppe did hand me a case this morning, only it's United States versus Garcia. So I didn't have a chance to read Davis this morning. But I'll review it and provide a 28-J letter if that's required. I think the court is completely correct in saying it would have been like trying to pull an inside straight. That's a nice rhetorical statement, but I don't know if it carries any weight. Well, but you do have to consider his comments based on his risk assessment. He's being told your possible range is 20 to life. 15 is pretty close to 20. Some people might gamble, you know, I'll go for a quiddle if I get the 20, okay. You know, I'll kick myself that I didn't take the 15, but that's a risk I'm willing to take. You also have to consider in context his statements, I can't do more than 10. I want to see my daughter graduate. I wrote this down. Doesn't that statement reflect a refined estrangement for reality, knowing what the facts were against him? I mean, he can say anything he wants, but there comes a time when you have to say, look, drug dealers don't have a choice of going to graduations or not. If he had known that he faced a mandatory life and is insisting upon 10 years. I guess that's the key. Yeah. I mean, it's one of the considerations. Yeah, that's not realistic, but that's not his mindset. He doesn't know that he can get mandatory life at that point. They got all the way up to the day of trial without him knowing that fact. I believe also that the court is correct in saying that there's a lack of discussion as to the credibility determination. It's not clear. The district court just simply said, I don't believe that he would have taken the 15. I think the government's argument is notable for what it omits as well. To me, the crux of this case is the comments about punishing him for going to trial. That's where the violation in this case comes in. Those comments, even if that was only part of the reason for the remedy that the court selected, those comments are an abuse of discretion. The sentence and hence the relief that he's going to choose to give Mr. Wiggins cannot in any way be based on the fact that Mr. Wiggins decided he wanted to go to trial. Well, I don't know if you'd consider Judge Benner's statements as reflecting his ire, but any ire should have been directed at original counsel, I guess. But that's irrelevant also. Well, in a way, it kind of goes to where do you assess the cost of counsel's ineffectiveness? Mr. Wiggins is not to blame in any way. You can certainly put it on counsel. And unfortunately, it does have costs, but you can't allocate those costs against Mr. Wiggins. One other thing I would point out, too, about what was Mr. Wiggins' mindset and his credibility, not only did counsel give him the wrong range of punishment, but he said, I believe the government will have a difficult time improving its case. That's in the statement of the case. I don't have the transcript citation in front of me for you. But he said, I believe the government will have a difficult time proving its case. The district court categorized the evidence as overwhelming. Counsel just made serious, serious errors in this case. Mr. Wiggins should get the benefit of the plea offer that was open to him on the day of trial. He should have both options. And again, let's see, I assume that you've already addressed the motion to dismiss the appeal that Mr. Wiggins made and the fact that you didn't appeal in time or didn't appeal at all? It's addressed in my reply brief and then my comments earlier in the argument. Very well. All right. Any further questions? I will wrap up. We thank both sides for the arguments. The case is now submitted, and we will take it under consideration.